Boynton, J.
As the case will go back for a new trial we .have deemed it necessary to consider only two assignments of •error.
1. Did the court err in rejecting the letter given to Dr; Gratigny by Charles E. Cheever, and the letter of Job S. Haworth with Cheever’s memorandum thereon? Although fhe letter of Cheever bears the date of January 1, 1870, it evidently was written January 1, 1871, as Cheever’s address at the foot of the letter bears the date of December 31,1870, and the case shows that Dr. Gratigny was not consulted prior to August of that year. There is no doubt that the letter and memorandum, if admissible, tended to prove that Cheever had had “ sickness and disease ” during the seven years prior to July •31, 1871, the date at which the insurance was effected, and for which he had received medical treatment from several physicians. But the testimony, we think, was incompetent. The insurance was, in terms, effected for the sole benefit of the jplaintiff below. The testimony rejected consisted of declarations of Charles E. Cheever, made, it is true, prior to the time the insurance was effected, but not under circumstances at all .affecting the rights subsequently acquired, under the policy, hy the plaintiff below. When the letter was written, or the memorandum made, Cheever could not have been acting as her ■agent. They were not the declarations of a sick person in relation to his present condition, as they related to a state of facts already past. Fraternal Mutual Ins. Co. v. Applegate, 7 Ohio St. 297. They were not a part of the res gestae of, any act or *208 fact, then transpiring, which they tended to characterize or explain. Swift v. Massachusetts M. L. Ins. Co., 63 N. Y. 186, They neither accompanied nor were explanatory of an act performed by Cheever. Hence, as respects the rights of the wife, they were the -declarations of a stranger. There is no doubt that where evidence of an act doné by a party is admissible, his declarations made at the time, explanatory of the act and tending to elucidate it, are also admissible as a part of the res gestas. Rut it is only where some act is itself relevant and material, and to which the declarations relate, and which they tend to explain, that they become competent. Morrill v. Foster, 32 N. H. 358. The effect of the declarations offered was, that Cheever, formerly, and about a year before, had been sick of cancer, and was cured by Dr. Gratigny. This was but a naked declaration concerning a past transaction or fact, and wholly unavailing to bind or affect any one except the declarant himself. Granting this, counsel fbr the plaintiff in error contend that such declarations were admissible to prove that at the time the application was made, Cheever knew that the representations were false, and therefore fraudulent. But it is quite immaterial whether he was or was not aware that the representations were false. The parties to the policy stipulated, that if the representations, or any of them, were untrue, the policy should be void, and the court gave to the company, in its instruction to the jury, the full benefit of this stipulation. Ætna Life Ins. Co. v. France, 91 U. S. 510. Knowledge of the falsity of the representations being an immaterial'faet, there was no error in rejecting the testimony offered to show it.
But we are of the opinion that the permission to counsel for the plaintiff below, against the objection of the defendant, to read to the jury and comment thereon, the pamphlet prepared by the secretary of the company for use by its agents, was an abuse of discretion preventing a fair trial. It had been offered in evidence, and, upon objection, withdrawn. It was permitted to be read by counsel to illustrate his argument.” It will be noticed that it was not even prepared by the company which issued the policy on the application alleged to contain *209 the false answers to the questions relating to the prior sickness of the subject insured. It, therefore, could have had no influence upon the conduct of the agents of the company to which the application was made.
In Legg v. Drake, 1 Ohio St. 287, it was held, that counsel had the right by way of argument or illustration to read a pertinent quotation or extract from a work on science or art, as well as from a classical, historical, or other publication, because, as was there stated, it would make no difference whether repeated by counsel from recollection, or read from a book; but that it would he an abuse of privilege to make the right thus to do, the pretense of getting improper matter before the jury.
To the rule there stated we fully adhere. The matter read or stated should be pertinent to the subject of inquiry, and so far calculated to elucidate it, as to aid the jury in a better understanding of the evidence produced at the trial. The matter read to the jury and commented on in the caso before us was not of this character. The question in issue related wholly to the truth or falsity of the statements of the subject insured, contained in the application respecting his previous condition of health. The matter contained in the pamphlet had no possible bearing upon that subject. It was filled with directions and suggestions, well calculated to excite prejudice against a company resorting to such methods to secure additions to its policy-holders, and4 to draw the minds of the jury away from the matter in dispute, and subject them to influences entirely foreign to the case. It contained not a word, tending to show whether Cheever had been sick or diseased during the seven years prior to the application for insurance, which was the sole question under investigation.
In the selection of jurors care is not only taken to obtain persons entirely impartial, and free from any bias resulting from previously-formed opinions, but the law carefully guards them, during the progress of the tidal, from the approach of the least improper influences which are calculated to affect their judgment. They are sworn in all cases to try the issue joined, and to render a true verdict, according to the law and the evidence *210 given in the case. The law has established well-defined rules determining the admissibility of evidence, one of which is that the evidence offered must correspond with the allegations, and be confined to the point in issue. All hearsay evidence is excluded. The jury must receive the evidence from witnesses under oath; it being the right of the party prosecuting or defending, to have the trial conducted according to the established usage of the common law. If a juror possesses personal knowledge of a fact pertinent to the issue, he must bo sworn as a witness, before any benefit can be derived to either p'arty by the knowledge thus possessed. These are some of the safeguards the law throws around the rights of parties litigant, while undergoing judicial inquiry ; and it is easy to see that they would be of little avail, if, during the progress of the trial, and with the sanction of the court, their effect could be destroyed or evaded by the latitude of speech or comment which the law accords to counsel.- Facts, of which no proof is offered and no presumption arises, are legally outside of the case, and cannot be brought -before the jury under any pretense whatever. This is held by numerous cases besides those cited in argument. Tucker v. Henniker, 41 N. H. 317; Rolfe v. Rumford, 66 Me. 564; Berry v. The State, 10 Geo. 511 ; Dickerson v. Burke, 25 Geo. 225; Koelges v. Guardian, Life Ins. Co., 57 N. Y. 638.
In Baim, v. Wilson, 10 Ohio St. 14, it was held to be error for the court to base a charge b to the jury on a state of facts purely conjectural, and as to which it affirmatively appears, no evidence was given at-the trial. In the course of the opinion, it was said that “ the judge must confine himself in his remarks-to the law and evidence in the case. So far from being under any obligation to call the attention of the jury to a conjectural state of facts, it would be highly improj)er for him to do so.” See also, Walker v. Stetson, 14 Ohio St. 90. The reason of this rule is very obvious, and is thus stated : “ Jurors are constantly inclined to look to the opinion of the judge for instruction as to what is, and what is not evidence; when he tells them to determine a given problem from the evidence before them, they can hardly do otherwise than infer that, in his *211 judgment, there is evidence upon which their verdict, when given, may rest.” Ibid.
It is but another application of the same process of reasoning, to say, that when the court below permitted counsel for the plaintiff to read and comment upon the pamphlet of instructions to agents, issued by the defendant, that the jury might justly ■ infer that the court was of the opinion that the matter thus read .and commented on, might properly affect their verdict. The testimony given respecting the disease of which Oheever died, wasi more or less conflicting. Some of the medical witnesses were of the opinion that he died of a recurrence of the .alleged ean- ■ cerous ailment- treated by Dr. Gratigny, while others were of the opinion that death was caused from a distinct and independent disease, originating after the policy took effect, and that the sore or tumor upon the neck did not amount to sickness or disease, as those terms are commonly understood. In view of this conflict in the testimony, we do not see how the reading of the pamphlet to the jury could be otherwise than prejudicial to the defendant to the extent of preventing a fair ••trial.
Judgment reversed, <md a new tried ordered.